[redacted]

Erik R. Puknys (SBN 190926)
erik.puknys@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorney for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.<br><br>Plaintiff,<br><br>v.<br><br>HANNIBAL IP, LLC<br><br>Defendant. | CASE NO. 5:26-cv-12069<br><br>**APPLE'S COMPLAINT FOR BREACH OF CONTRACT, BREACH OF FRAND OBLIGATIONS, AND DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 11,057,896; 11,641,661; 11,272,535; 11,683,142; 10,911,201; 12,108,412**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Apple Inc. ("Apple"), by and through its undersigned attorneys, brings this Complaint against Defendant Hannibal IP, LLC ("Hannibal") for Breach of Contract, Breach of FRAND Contractual Commitments, and Declaratory Judgment of Noninfringement of U.S. Patent Nos. 11,057,896 (the "'896 Patent"), 11,641,661 (the "'661 Patent"), 11,272,535 (the "'535 Patent"), 11,683,142 (the "'142 Patent"), 10,911,201 (the "'201 Patent"), and 12,108,412 (the "'412 Patent") (together, the "Patents-in-Suit"), and in support of its Complaint alleges as follows:

**<u>NATURE OF THE ACTION</u>**

1. Apple needed to file this action because Hannibal acted in bad faith and broke promises to negotiate fairly—including by suing Apple for patent infringement without warning. Indeed, this action concerns Hannibal's abrupt decision to break off negotiations with and sue Apple [redacted] Hannibal sued Apple in the Western District of Texas, alleging that Apple infringes Hannibal's patents. Apple brings this case to hold Hannibal to its promises and to confirm that Apple does not infringe Hannibal's patents.

2. [redacted]

3. Hannibal also purports to own patents it claims are essential to 5G cellular standards, and contends that certain Apple products, because they support those standards, necessarily infringe its patents. But Hannibal is obligated to negotiate in good faith toward a fair, reasonable, and non-discriminatory ("FRAND") license with Apple, which Hannibal says needs a license to those patents. Hannibal did not do so.

4. Apple therefore seeks relief for Hannibal breaking its promises to Apple and for a declaration resolving the controversy over whether Apple infringes the Patents-in-Suit.

5. Since its founding fifty years ago, Apple has been a pioneer in the design, development, and manufacture of consumer electronics products. Apple's innovations have led to the introduction of iconic products that have profoundly influenced modern life. Apple has been awarded thousands of patents by the United States Patent and Trademark Office ("USPTO"), which protect the technologies underlying Apple's groundbreaking inventions.

6. Hannibal claims that patents in its portfolio are essential to 5G wireless standards (i.e., that they are "standard essential patents" or "SEPs"). Hannibal's infringement theories rest not on any evidence of how Apple's products actually work, but merely on those products' alleged support of certain aspects of 5G wireless standards. [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

10. [redacted], Hannibal sued Apple [redacted], accusing Apple of infringing the Patents-in-Suit, [redacted]. Compl., ¶¶ 18–23, 26, *Hannibal IP, LLC v. Apple Inc.*, No. 7:26-cv-00341, Dkt. 1 (W.D. Tex. Aug. 28, 2026) (the "WDTX Action") (attached as **Exhibit 4**). The products Hannibal accuses in the WDTX Action

(“Apple Accused Devices”) include at least those iPhone models that support the 5G wireless standards beginning with the iPhone 12 (introduced in 2020) and later models, and iPad models beginning with the iPad Pro (3rd generation) (introduced in 2021) and later models. Ex. 4, ¶¶ 24–25.

**THE PARTIES**

11. Plaintiff Apple is a California corporation with a principal place of business at One Apple Park Way, Cupertino, California 95014. Apple has over 35,000 employees who work at or near its headquarters in Cupertino, California.

12. Hannibal states that it is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business located at 8105 Rasor Blvd., STE 210, Plano, Texas 75024. Ex. 4, ¶ 1. On information and belief, its members are citizens of Texas.

**JURISDICTIONAL STATEMENT**

13. This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and under the patent laws of the United States, Title 35 of the United States Code.

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202. Jurisdiction is also proper under 28 U.S.C. § 1332 because Apple and Hannibal are citizens of different states, and the value of the controversy exceeds $75,000.00.

15. Pursuant to 28 U.S.C. § 2201, this Court may grant the declaratory relief Apple seeks because an actual case or controversy exists between Apple and Hannibal, at least because Apple does not infringe and has not infringed any claims of the Patents-in-Suit, and Hannibal has accused certain Apple products of infringing those patents in the Western District of Texas.

16. This Court has specific personal jurisdiction over Hannibal because Hannibal, in the process of purposefully directing its enforcement and licensing activities at Apple in California, has engaged in actions in and directed towards California that have established sufficient minimum contacts out of which Apple’s claims arise. Further, the exercise of personal jurisdiction based on Hannibal’s contacts comports with traditional notions of fairness and substantial justice.

17. Hannibal initiated contact with Apple on May 27, 2022, directing its initial letter (attached as **Exhibit 5**) to Apple’s California offices. Ex. 5. Hannibal sent that letter to Heather Mewes, Apple’s Director of Global IP Transactions, who is located in the Northern District of

California, while simultaneously sending a copy by certified mail to Apple's registered agent for service of process in California (CT Corporation System, 330 N. Brand Blvd., Ste. 700, Glendale, California). *Id*. Both were directed to Apple, a company headquartered in the Northern District of California, [redacted]

18. On May 31, 2022, an in-house attorney on Apple's IP Transactions team, Matt Clements, responded to Hannibal [redacted] Mr. Clements is also based in the Northern District of California.

19. Also included on Mr. Clements' response email to Hannibal was another in-house attorney on Apple's IP Transactions team, Brian Ankenbrandt. Ex. 6. Mr. Ankenbrandt is also based in the Northern District of California.

20. [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

23. Beginning on September 20, 2022, an additional Apple in-house attorney on the IP Transactions team, Kuan-Chieh (Genie) Tu, joined the correspondence and was included on all subsequent virtual discussions and emails with Hannibal (correspondence attached as **Exhibit 8**). Ms. Tu was also based in the Northern District of California throughout the duration of the parties' negotiations.

24. The parties met virtually on at least eight occasions (correspondence regarding these meetings is attached as **Exhibits 9, 10, 11, 12, 13**, **14**, **15**, and **16**, respectively). At each of the parties' meetings on August 18, 2022, October 6, 2022, February 9, 2023, May 25, 2023, November 2, 2023, August 28, 2024, June 5, 2026, and June 16, 2026, one or more of Mr. Clements, Mr. Ankenbrandt, and Ms. Tu were present. *Id.*

[redacted] [redacted] In total, the parties exchanged more than ninety emails. Each of these emails was sent either by Hannibal and/or its counsel and addressed or copied to Mr. Clements, Mr. Ankenbrandt, and Ms. Tu (after September 20, 2022), or sent from one of those Apple in-house counsel to Hannibal. *See, e.g.,* Exs. 5, 6, 9–19. Every one of the emails and virtual meetings was directed at [redacted]

26. [redacted] In the WDTX Action, Hannibal represented that it owned and controlled all the Patents-in-Suit, including the ’661 and ’412 Patents. Ex. 4, ¶¶18–23. Hannibal’s contacts with Apple in California, accordingly, [redacted]

27. Moreover, in the WDTX Action, Hannibal accuses both Apple modems and Qualcomm modems of allegedly infringing the Patents-in-Suit. Ex. 4, ¶¶ 10, 25. Hannibal identified seven different Qualcomm modems that it accuses of infringing the asserted patents. *Id*. Hannibal itself acknowledged that Qualcomm is headquartered in San Diego, California, and that part of Apple’s cellular modem group is also located in San Diego, which Hannibal alleges is due in part to its proximity to Qualcomm. *Id.*, ¶ 10.

28. Thus, Hannibal knowingly and purposefully directed its assertions of the Patents-in-Suit [redacted] (particularly, in the Northern District of California where Apple is headquartered). Hannibal’s initial outreach to Apple was sent to a California address. [redacted] Hannibal engaged in discussions with Apple’s IP Transactions team located in Cupertino, California extensively over email and on virtual meetings. Hannibal accused components from third party Qualcomm, which Hannibal concedes is located in California, along with at least part of Apple’s cellular modem team. Ex. 4, ¶¶ 10, 25.

29. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Apple’s claims occurred in this District, and because Hannibal is subject to personal jurisdiction here.

30. An immediate, real, and justiciable controversy exists between Apple and Hannibal as to whether Apple is infringing or has infringed the Patents-in-Suit, and as to Hannibal’s breach of

the [redacted] and breach of its contractual commitment under the ETSI IPR Policy to license its allegedly standard essential patents on FRAND terms.

## DIVISIONAL ASSIGNMENT

31. This is an Intellectual Property Rights Action subject to assignment on a district-wide basis pursuant to Civil L.R. 3-2(c) and 3-5(b).

## FACTUAL ALLEGATIONS AND BACKGROUND

### A. Hannibal Breached [redacted]

32. On information and belief, Hannibal is a patent assertion entity which was formed only a year before it initiated contact with Apple, in 2021. Hannibal is an affiliate of Longhorn IP, LLC, which has a long history of pursuing IP licensing agreements with high-tech companies. *See* Ex. 5 at 2.

33. When it initiated contact with Apple, [redacted] Apple responded days later, and the parties agreed to meet virtually to further evaluate Hannibal's assertions.

34. Those negotiations remained active and ongoing through August 2026. In 2026 alone, the parties exchanged multiple emails in connection with these discussions.

35. [redacted]

36. Accordingly, an actual and justiciable case or controversy exists between Apple and Hannibal regarding Hannibal's breach of the [redacted]

### B. Hannibal Breached Its FRAND Obligations

37. In the WDTX Action, Hannibal alleges that it "is the assignee of numerous patents, originally assigned to FG Innovation Company Limited ('FGI'), that are, and remain, essential to practicing the 3GPP 5G Standard." Ex. 4, ¶¶ 149–150.

38. On information and belief, FGI submitted to ETSI one or more IPR Information Statements and Licensing Declarations covering patents in Hannibal's portfolio, including at least the declarations identified in the ETSI IPR database as ISLD-201908-021, ISLD-202004-011, ISLD-202009-062, ISLD-202009-063, and ISLD-202104-054 (attached as **Exhibit 20, Exhibit 21, Exhibit 22, Exhibit 23,** and **Exhibit 24,** respectively).

39. Hannibal, as FGI's successor in interest, is bound by the ETSI IPR Policy and that FRAND commitment set out in the declarations above.

40. Hannibal stated that "[i]n conformance with [ETSI]'s IPR Policy," it "informed Apple that it [was] prepared to grant Apple an irrevocable license to Hannibal's standard essential patents, including the Asserted Patents, on FRAND or better terms." Ex. 4, ¶ 150. [redacted] to Apple.

41. [redacted], Hannibal did not uphold its contractual commitment under the ETSI IPR Policy to negotiate in good faith with Apple.

42. Accordingly, an actual and justiciable case or controversy exists between Apple and Hannibal regarding Hannibal's breach of the requirement to negotiate in good faith with Apple toward a FRAND license by [redacted]

## C. Apple Does Not Infringe the Patents-in-Suit

43. Founded in 1976, Apple is world-renowned for creating innovative products that people love. Apple produces those products through its significant investment in and dedication to research and development and product design.

44. Apple created the Apple Accused Devices that allegedly support the technologies that Hannibal says infringe its patents. And Apple engineers who work on the Apple Accused Devices include engineers based in Cupertino, California. Because documents about Apple's products, including technical documents and source code, are created and maintained by the employees working on those products, such documents are primarily created and maintained in Northern California.

45. The Apple Accused Devices do not directly or indirectly infringe any claim of the Patents-in-Suit, literally or under the doctrine of equivalents. And no third party infringes any claim of the Patents-in-Suit by using the Apple Accused Devices. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. The Apple Accused Devices are not designed for use in any combination that infringes any claim of the Patents-in-Suit. To the contrary, each has substantial uses that do not infringe any claim of the Patents-in-Suit.

46. Accordingly, an actual and justiciable case or controversy exists by virtue of Hannibal's allegations in the WDTX Action that various Apple products infringe the Patents-in-Suit. Ex. 4, ¶¶ 18–26.

**FIRST COUNT**

**(Breach of Contract)**

47. Apple restates and incorporates by reference the allegations in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

[redacted]

50. [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

59. As a direct and proximate result of Hannibal's breach of contract, Apple has suffered and continues to suffer damages, [redacted] Although Apple cannot yet specify the exact, full amount of Apple's damages resulting from Hannibal's breach of contract with the case in its infancy, Apple has been damaged at least in an amount in excess of $75,000.00. The reasonable attorneys' fees Apple will incur as a result of Hannibal's breach—fees that are recoverable as foreseeable consequential damages resulting from Hannibal's breach—will be well in excess of $75,000.00. [redacted]

**SECOND COUNT**

**(Breach of FRAND Obligations)**

60. Apple restates and incorporates by reference the allegations in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. In 1998, a group of telecommunications entities together formed an industry standard-setting consortium named the 3rd Generation Partnership Project ("3GPP"). In addition to developing the standards for 3G and 4G cellular technologies, 3GPP developed the fifth-generation technology standard for cellular networks (the "5G Standard"). Because certain patents may be considered "essential" to supporting cellular standards (standard essential patents, or "SEPs"), the European Telecommunications Standards Institute ("ETSI") requires owners of SEPs to disclose those patents and, under the ETSI Intellectual Property Rights Policy (the "ETSI IPR Policy"), commit to license them on "fair, reasonable, and non-discriminatory" ("FRAND") terms. Clause 6.1 of the ETSI IPR Policy provides:

> When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such IPR to at least the following extent:
>
> - MANUFACTURE, including the right to make or have made customized components and sub-systems to the licensee's own design for use in MANUFACTURE;
> - sell, lease, or otherwise dispose of EQUIPMENT so MANUFACTURED;
> - repair, use, or operate EQUIPMENT; and
> - use METHODS.
>
> The above undertaking may be made subject to the condition that those who seek licenses agree to reciprocate.

62. Clause 6.1bis of the ETSI IPR Policy further provides that "FRAND licensing undertakings made pursuant to Clause 6 shall be interpreted as encumbrances that bind all successors-in-interest."

63. Clause 15.6 of the ETSI IPR Policy defines "ESSENTIAL" as follows:

> "ESSENTIAL" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt, in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

64. Hannibal has represented that the Patents-in-Suit are standard essential patents subject to a FRAND commitment, by alleging that it "is the assignee of numerous patents, originally assigned to FG Innovation Company Limited, that are, and remain, essential to practicing the 3GPP 5G Standard," and that, "[i]n conformance with [ETSI]'s IPR Policy," it "informed Apple that it [was] prepared to grant Apple an irrevocable license to Hannibal's standard essential patents, including the Asserted Patents, on FRAND or better terms." Ex. 4, ¶¶ 149–150.

65. On information and belief, each IPR Information Statement and Licensing Declaration that FGI submitted to ETSI stated:

> To the extent that the IPR(s) disclosed in the attached *IPR Information Statement Annex* are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached *IPR Information Statement Annex*, the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licenses under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1 bis of the ETSI IPR Policy.

*See* Exs. 20–24, at 1.

66. The objectives of the ETSI IPR Policy include seeking to reduce risk to those applying the ETSI standards, as explained in Clause 3.1 of the ETSI IPR policy:

> It is ETSI's objective to create STANDARDS and TECHNICAL SPECIFICATIONS that are based on solutions which best meet the technical objectives of the European telecommunications sector, as defined by the General Assembly. In order to further this objective the ETSI IPR POLICY seeks to reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS and TECHNICAL SPECIFICATIONS, that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable. In achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs.

67. The FRAND commitment exists in part for the benefit of product innovators that support the ETSI standards, such as Apple, which rely on the promise that SEPs will be available to license on FRAND terms. Apple is therefore an intended third-party beneficiary of Hannibal's FRAND commitment and may enforce it.

68. Under the ETSI IPR Policy and French law, which governs the IPR policy,[1] even if Hannibal's claim that the Patents-in-Suit are SEPs were accurate (it is not), Hannibal is obligated to negotiate in good faith toward a license with Apple on FRAND terms.

[redacted]

[1] ETSI IP Rights Policy, § 12, Appendix A.1.

[redacted]

70. As alleged above, the parties communicated extensively over four years of negotiations.

71. [redacted] Hannibal has breached, and continues to breach, its FRAND commitment under the ETSI IPR Policy on multiple, independent bases, including: (a) failing to negotiate in good faith toward a license on FRAND terms, including by filing and pursuing the WDTX Action; [redacted] that would impair Apple's ability to obtain a FRAND license from Hannibal.

72. By contrast, from Hannibal's initial outreach in 2022 through the present date, Apple has negotiated in good faith. Apple responded promptly to Hannibal's outreach, [redacted] met with Hannibal on at least eight occasions, and continued to engage in active discussions through August 2026. *See* Exs. 6–19.

73. [redacted]

[redacted] [redacted] Apple has suffered damages

including at least in the form of attorney's fees and the cost of litigating the WDTX Action, which are in excess of $75,000.

**THIRD COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 11,057,896)**

75. Apple restates and incorporates by reference the allegations in paragraphs 1 through 74 of this Complaint as if fully set forth herein. Apple offers these grounds as examples and reserves the right to interpret the claims in light of Hannibal's apparent interpretation of the claims as Apple's investigation continues.

76. Hannibal claims to own all rights, title, and interest in and under the '896 Patent. The '896 Patent is titled "Methods and Apparatuses of Determining Quasi Co-Location (QCL) Assumptions for Beam Operations." The '896 Patent issued on July 6, 2021, from U.S. Patent Application No. 16/660,726, filed on October 22, 2019. The '896 Patent lists Chien-Chun Cheng, Tsung-Hua Tsai, Yu-Hsin Cheng, and Wan-Chen Lin as inventors and FG Innovation Company Limited as the assignee on the face of the patent. A true and correct copy of the '896 Patent is attached hereto as **Exhibit 25**.

77. Apple does not directly or indirectly infringe any claim of the '896 Patent, either literally or under the doctrine of equivalents. For example, claim 1 of the '896 Patent recites:

1. A user equipment (UE) comprising:

one or more non-transitory computer-readable media having computer-executable instructions embodied thereon; and

at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions to:

monitor at least one of a plurality of Control Resource Sets (CORESETs) configured for the UE within an active Bandwidth Part (BWP) of a serving cell in a time slot;

apply a first Quasi Co-Location (QCL) assumption of a first CORESET of a set of one or more monitored CORESETs to receive an aperiodic Channel Status Information-Reference Signal (CSI-RS),

wherein the first CORESET is associated with a monitored search space configured with a lowest CORESET Identity (ID) among the set of one or more monitored CORESETs.

78. Apple's products therefore do not infringe at least claim 1 of the '896 Patent because Apple's products do not satisfy at least the limitation of claim 1 requiring the "monitor[ing] at least one of a plurality of Control Resource Sets (CORESETs) configured for the UE within an active Bandwidth Part (BWP) of a serving cell in a time slot." Hannibal has not shown that Apple supports this portion of the 3GPP standard in the manner described in the standard or that such functionality is required by the standard. More specifically, support of the relevant 3GPP standard in an Apple product does not require the product to monitor CORESETs in time. Further, support of the relevant 3GPP standard in an Apple product does not require applying a QCL assumption amongst all CORESETs a UE monitors in an active BWP. On information and belief, the portions of the standard that Hannibal may rely upon do not require the claimed limitation.

79. No third party infringes any claim of the '896 Patent by using the Apple Accused Devices. Hannibal warranted that "there is no basis to allege that Apple willfully or knowingly infringed the Patents, or has induced others to infringe or contributed to infringement by others." Ex. 1, § 3. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Hannibal does not show that Apple had knowledge of the '896 Patent or alleged infringement of the '896 Patent by the Apple Accused Devices during the relevant time. For at least the reasons explained above, the Apple Accused Devices and the use of the Apple Accused Devices do not directly infringe the '896 Patent. The Apple Accused Devices are not designed for use in any combination which infringes any claim of the '896 Patent. To the contrary, each has substantial uses that do not infringe any claim of the '896 Patent and are not accused by Hannibal of infringing the '896 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

80. Thus, there exists an actual controversy between Apple and Hannibal with respect to Apple's alleged infringement of the '896 Patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '896 Patent.

81. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the ’896 Patent.

**FOURTH COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 11,641,661)**

82. Apple restates and incorporates by reference the allegations in paragraphs 1 through 81 of this Complaint as if fully set forth herein. Apple offers these grounds as examples and reserves the right to interpret the claims in light of Hannibal’s apparent interpretation of the claims as Apple’s investigation continues.

83. Hannibal claims to own all rights, title, and interest in and under the ’661 Patent. The ’661 Patent is titled “Methods and apparatuses for determining quasi co-location (QCL) assumptions for beam operations.” The ’661 Patent issued on May 2, 2023, from U.S. Patent Application No. 17/313,283, filed on May 6, 2021. The ’661 Patent lists Chien-Chun Cheng, Tsung-Hua Tsai, Yu-Hsin Cheng, and Wan-Chen Lin as inventors and Hannibal IP LLC as the assignee on the face of the patent. A true and correct copy of the ’661 Patent is attached hereto as **Exhibit 26**.

84. Apple does not directly or indirectly infringe any claim of the ’661 Patent, either literally or under the doctrine of equivalents. For example, claim 1 of the ’661 Patent recites:

1. A user equipment (UE) for performing beam operations, the UE comprising:

one or more non-transitory computer-readable media having computer-executable instructions embodied thereon; and

at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions to:

monitor at least one of a plurality of Control Resource Sets (CORESETs) configured for the UE within an active Bandwidth Part (BWP) of a serving cell in a time slot;

receive Downlink Control Information (DCI) scheduling a Downlink (DL) Reference Signal (RS), wherein a scheduling offset between an end of a last symbol of a Physical Downlink Control Channel (PDCCH) carrying the DCI and a beginning of a first symbol of a resource carrying the DL RS is less than a threshold; and

apply a first Quasi Co-Location (QCL) assumption of a first CORESET of a set of one or more of the monitored at least one of a plurality of CORESETs to receive a DL RS,

wherein the first CORESET is associated with a monitored search space configured with a lowest CORESET Identity (ID) among the set of one or more of the monitored at least one of the plurality of CORESETs.

85. Apple's products therefore do not infringe at least claim 1 of the '661 Patent because Apple's products do not satisfy at least the limitation of claim 1 requiring the "monitor[ing] at least one of a plurality of Control Resource Sets (CORESETs) configured for the UE within an active Bandwidth Part (BWP) of a serving cell in a time slot." Hannibal has not shown that Apple supports this portion of the 3GPP standard in the manner described in the standard or that such functionality is required by the standard. More specifically, support of the relevant 3GPP standard in an Apple product does not require the product to monitor CORESETs in time. Further, support of the relevant 3GPP standard in an Apple product does not require applying a QCL assumption amongst all CORESETs a UE monitors in an active BWP. On information and belief, the portions of the standard that Hannibal may rely upon do not require the claimed limitation.

86. No third party infringes any claim of the '661 Patent by using the Apple Accused Devices. Hannibal warranted that "there is no basis to allege that Apple willfully or knowingly infringed the Patents, or has induced others to infringe or contributed to infringement by others." Ex. 1, § 3. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Hannibal does not show that Apple had knowledge of the '661 Patent or alleged infringement of the '661 Patent by the Apple Accused Devices during the relevant time. For at least the reasons explained above, the Apple Accused Devices and the use of the Apple Accused Devices do not directly infringe the '661 Patent. The Apple Accused Devices are not designed for use in any combination which infringes any claim of the '661 Patent. To the contrary, each has substantial uses that do not infringe any claim of the '661 Patent and are not accused by Hannibal of infringing the '661 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

87. Thus, there exists an actual controversy between Apple and Hannibal with respect to Apple's alleged infringement of the '661 Patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '661 Patent.

88. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '661 Patent.

## FIFTH COUNT

## (Declaration of Noninfringement of U.S. Patent No. 11,272,535)

89. Apple restates and incorporates by reference the allegations in paragraphs 1 through 88 of this Complaint as if fully set forth herein. Apple offers these grounds as examples and reserves the right to interpret the claims in light of Hannibal's apparent interpretation of the claims as Apple's investigation continues.

90. Hannibal claims to own all rights, title, and interest in and under the '535 Patent. The '535 Patent is titled "Method and Apparatus for LBT Failure Detection." The '535 Patent issued on March 8, 2022, from U.S. Patent Application No. 16/737,787, filed on January 8, 2020. The '535 Patent lists Hung-Chen Chen, Chie-Ming Chou, Chia-Hung Wei, and Mei-Ju Shih as inventors and Hannibal IP LLC as the assignee. A true and correct copy of the '535 Patent is attached hereto as **Exhibit 27**.

91. Apple does not directly or indirectly infringe any claim of the '535 Patent, either literally or under the doctrine of equivalents. For example, claim 1 of the '535 Patent recites:

> 1. A user equipment (UE) comprising:
>
> one or more non-transitory computer-readable media having computer-executable instructions embodied thereon; and
>
> at least one processor coupled to the one or more non-transitory computer-readable media, the at least one processor is configured to execute the computer-executable instructions to:
>
> receive, by a Medium Access Control (MAC) entity of the UE, a Listen-Before-Talk (LBT) failure indication from a lower layer of the UE for all uplink (UL) transmissions;

increase an LBT failure counter when the MAC entity receives the LBT failure indication;

determine that an LBT failure event has occurred when the LBT failure counter is greater than or equal to a threshold; and

reset the LBT failure counter when a reset of the MAC entity is requested by an upper layer of the UE.

92. Apple does not infringe claim 1 of the ’535 Patent at least because Apple’s products do not satisfy at least the limitations of claim 1 requiring that the at least one processor is configured to execute the computer-executable instructions to “receive, by a Medium Access Control (MAC) entity of the UE, a Listen-Before-Talk (LBT) failure indication from a lower layer of the UE for all uplink (UL) transmissions.” Hannibal has not shown that Apple supports this portion of the 3GPP standard in the manner described in the standard or that such functionality is required by the standard. More specifically, support of the relevant 3GPP standards in Apple products does not require the products to “receive, by a Medium Access Control (MAC) entity of the UE, a Listen-Before-Talk (LBT) failure indication.” Further, support of the relevant 3GPP standards in Apple products does not require the products to receive an LBT failure indication for “all” uplink (UL) transmissions. On information and belief, the portions of the standards that Hannibal may rely upon do not require the claimed limitations.

93. Further, Apple does not infringe claim 1 of the ’535 Patent at least because Apple’s products do not satisfy at least the limitations of claim 1 requiring that the at least one processor is configured to execute the computer-executable instructions to “determine that an LBT failure event has occurred when the LBT failure counter is greater than or equal to a threshold.” More specifically, upon information and belief, support of the optional LBT recovery procedure defined by the relevant 3GPP standards requires that LBT failure events are determined before the LBT failure counter is compared to a threshold such that the LBT failure counter is increased with each failure event. The claim language, on the other hand, requires that “an LBT failure event has occurred when the LBT failure counter is greater than or equal to a threshold.” On information and

belief, the portions of the standards that Hannibal may rely upon do not require the claimed limitations.

94. No third party infringes any claim of the ’535 Patent by using the Apple Accused Devices. Hannibal warranted that “there is no basis to allege that Apple willfully or knowingly infringed the Patents, or has induced others to infringe or contributed to infringement by others.” Ex. 1, § 3. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Hannibal does not show that Apple had knowledge of the ’535 Patent or alleged infringement of the ’535 Patent by the Apple Accused Devices during the relevant time. For at least the reasons explained above, the Apple Accused Devices and the use of the Apple Accused Devices do not directly infringe the ’535 Patent. The Apple Accused Devices are not designed for use in any combination which infringes any claim of the ’535 Patent. To the contrary, each has substantial uses that do not infringe any claim of the ’535 Patent and are not accused by Hannibal of infringing the ’535 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

95. Thus, there exists an actual controversy between Apple and Hannibal with respect to Apple’s alleged infringement of the ’535 Patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties’ respective rights regarding the ’535 Patent.

96. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the ’535 Patent.

**SIXTH COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 11,683,142)**

97. Apple restates and incorporates by reference the allegations in paragraphs 1 through 96 of this Complaint as if fully set forth herein. Apple offers these grounds as examples and reserves the right to interpret the claims in light of Hannibal’s apparent interpretation of the claims as Apple’s investigation continues.

98. Hannibal claims to own all rights, title, and interest in and under the ’142 Patent. The ’142 Patent is titled “Method of Deriving QCL Assumption in Multi-Panel Transmission and Related Device.” The ’142 Patent issued on June 20, 2023, from U.S. Patent Application No.

16/842,642, filed on April 7, 2020. The ’142 Patent lists Chia-Hao Yun and Yu-Hsin Cheng as inventors and Hannibal IP LLC as the assignee. A true and correct copy of the ’142 Patent is attached hereto as **Exhibit 28**.

99. Apple does not directly or indirectly infringe any claim of the ’142 Patent, either literally or under the doctrine of equivalents. For example, claim 10 of the ’142 Patent recites:

> 10. A user equipment (UE) for deriving Quasi-CoLocation (QCL) assumption in multi-panel transmission, the UE comprising:
>
> a processor, for executing computer-executable instructions; and
>
> a non-transitory machine-readable medium, coupled to the processor, for storing the computer-executable instructions, wherein the computer-executable instructions instruct the processor to:
>
> report, to a network, capabilities of supporting a multi-transmit-receive point (TRP) operation for supporting simultaneous reception from multiple TRPs and a panel-specific default beam for at least one physical downlink shared channel (PDSCH) reception;
>
> obtain a plurality of control resource set (CORESET) groups from the network of a wireless communication system;
>
> determine a default QCL assumption for demodulation reference signal (DM-RS) port(s) of the at least one PDSCH reception scheduled by a scheduling physical downlink control channel (PDCCH) according to a CORESET of one of the plurality of CORESET groups when a time offset between a reception of downlink control information (DCI) in the scheduling PDCCH and the at least one PDSCH reception is less than a threshold, wherein at least one of the plurality of CORESET groups includes at least one CORESET indicating the default QCL assumption; and
>
> apply the default QCL assumption for reception of the DM-RS port(s) of the at least one PDSCH.

100. Apple does not infringe claim 10 of the ’142 Patent at least because Apple’s products do not satisfy at least the limitations of claim 10 requiring the UE to “report, to a network, capabilities of supporting a multi-transmit-receive point (TRP) operation for supporting

simultaneous reception from multiple TRPs and a panel-specific default beam for at least one physical downlink shared channel (PDSCH) reception"; to "obtain a plurality of control resource set (CORESET) groups from the network of a wireless communication system"; to determine the default QCL assumption "according to a CORESET of one of the plurality of CORESET groups"; and "wherein at least one of the plurality of CORESET groups includes at least one CORESET indicating the default QCL assumption." Hannibal has not shown that Apple supports this portion of the 3GPP standard in the manner described in the standard or that such functionality is required by the standard. More specifically, support of the relevant 3GPP standards in Apple products does not require the products to report a capability of supporting multi-TRP operation or a panel-specific default beam. Further, support of the relevant 3GPP standards in Apple products does not require the products to obtain a plurality of CORESET groups. Likewise, support of the relevant 3GPP standards in Apple products does not require the products to determine a default QCL assumption according to a CORESET of one of a plurality of CORESET groups, or to have a CORESET group that includes a CORESET indicating the default QCL assumption. On information and belief, the portions of the standards that Hannibal may rely upon do not require the claimed limitations.

101. No third party infringes any claim of the '142 Patent by using the Apple Accused Devices. Hannibal warranted that "there is no basis to allege that Apple willfully or knowingly infringed the Patents, or has induced others to infringe or contributed to infringement by others." Ex. 1, § 3. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Hannibal does not show that Apple had knowledge of the '142 Patent or alleged infringement of the '142 Patent by the Apple Accused Devices during the relevant time. For at least the reasons explained above, the Apple Accused Devices and the use of the Apple Accused Devices do not directly infringe the '142 Patent. The Apple Accused Devices are not designed for use in any combination which infringes any claim of the '142 Patent. To the contrary, each has substantial uses that do not infringe any claim of the '142 Patent and are not accused by Hannibal of infringing the '142 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content. Thus, there exists an actual controversy between Apple and Hannibal with respect to Apple's alleged infringement of the '142 Patent. Accordingly,

declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '142 Patent.

102. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '142 Patent.

**SEVENTH COUNT**

**(Declaration of Noninfringement of U.S. Patent No. 10,911,201)**

103. Apple restates and incorporates by reference the allegations in paragraphs 1 through 102 of this Complaint as if fully set forth herein. Apple offers these grounds as examples and reserves the right to interpret the claims in light of Hannibal's apparent interpretation of the claims as Apple's investigation continues.

104. Hannibal claims to own all rights, title, and interest in and under the '201 Patent. The '201 Patent is titled "Methods and Apparatuses for Multi-TRP Transmission." The '201 Patent issued on February 2, 2021, from U.S. Patent Application No. 16/427,371, filed on May 31, 2019. The '201 Patent lists Yu-Hsin Cheng as inventor and FG Innovation Company Limited as the assignee. A true and correct copy of the '201 Patent is attached hereto as **Exhibit 29**.

105. Apple does not directly or indirectly infringe any claim of the '201 Patent, either literally or under the doctrine of equivalents. For example, claim 11 of the '201 Patent recites:

11. A User Equipment (UE) comprising:

one or more non-transitory computer-readable media having computer-executable instructions embodied thereon;

at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions to:

receive Transmission/Reception Point (TRP) information from a base station;

communicate with a plurality of TRPs based on the TRP information;

receive Downlink Control Information (DCI) comprising a rate matching indicator indicating a particular one of a plurality of rate match pattern configurations contained in a Radio Resource Control (RRC) message;

identify a particular TRP transmitting the DCI based on the TRP information; and

perform a rate matching procedure, based on the particular rate match pattern configuration, to identify at least one radio resource unavailable for a Physical Downlink Shared Channel (PDSCH) on which a DL signal is transmitted by the particular TRP;

wherein the TRP information identifies a correspondence between the plurality of TRPs and a plurality of Downlink (DL) Reference Signal (RS) resources;

wherein the TRP information comprises at least one of:

a plurality of TRP Identifiers (IDs);

a plurality of Control Resource Set (CORESET) IDs; and

a TRP mapping table comprising a plurality of TRP indices and a plurality of DL RS resource indices.

106. Apple does not infringe claim 11 of the ’201 Patent at least because Apple products do not satisfy at least the limitations of claim 11 that require the UE to “receive Transmission/Reception Point (TRP) information from a base station”; to “communicate with a plurality of TRPs based on the TRP information”; and “wherein the TRP information identifies a correspondence between the plurality of TRPs and a plurality of Downlink (DL) Reference Signal (RS) resources.” Hannibal has not shown that Apple supports this portion of the 3GPP standard in the manner described in the standard or that such functionality is required by the standard. More specifically, support of the relevant 3GPP standards in Apple products does not require the product to receive TRP information from a base station, to communicate with a plurality of TRPs based on the TRP information, or to have any TRP information that identifies a correspondence between a plurality of TRPs and a plurality of DL RS resources. On information and belief, the portions of the standard that Hannibal may rely upon do not require the claimed limitations.

107. No third party infringes any claim of the ’201 Patent by using the Apple Accused Devices. Hannibal warranted that “there is no basis to allege that Apple willfully or knowingly infringed the Patents, or has induced others to infringe or contributed to infringement by others.” Ex. 1, § 3. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Hannibal does not show that Apple had knowledge of the ’201 Patent or

alleged infringement of the ’201 Patent by the Apple Accused Devices during the relevant time. For at least the reasons explained above, the Apple Accused Devices and the use of the Apple Accused Devices do not directly infringe the ’201 Patent. The Apple Accused Devices are not designed for use in any combination which infringes any claim of the ’201 Patent. To the contrary, each has substantial uses that do not infringe any claim of the ’201 Patent and are not accused by Hannibal of infringing the ’201 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

108. Thus, there exists an actual controversy between Apple and Hannibal with respect to Apple’s alleged infringement of the ’201 Patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties’ respective rights regarding the ’201 Patent.

109. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the ’201 Patent.

## EIGHTH COUNT

## (Declaration of Noninfringement of U.S. Patent No. 12,108,412)

110. Apple restates and incorporates by reference the allegations in paragraphs 1 through 109 of this Complaint as if fully set forth herein. Apple offers these grounds as examples and reserves the right to interpret the claims in light of Hannibal’s apparent interpretation of the claims as Apple’s investigation continues.

111. Hannibal claims to own all rights, title, and interest in and under the ’412 Patent. The ’412 Patent is titled “Method and Apparatus for Uplink Transmission.” The ’412 Patent issued on October 1, 2024, from U.S. Patent Application No. 17/685,089, filed on March 2, 2022. The ’412 Patent lists Heng-Li Chin, Chia-Hung Wei, Wan-Chen Lin, Yu-Hsin Cheng, and Chie-Ming Chou as inventors and Hannibal IP LLC as the assignee. A true and correct copy of the ’412 Patent is attached hereto as **Exhibit 30**.

112. Apple does not directly or indirectly infringe any claim of the ’412 Patent, either literally or under the doctrine of equivalents. For example, claim 1 of the ’412 Patent recites:

1. A user equipment (UE) comprising:

one or more non-transitory computer-readable media having computer-executable instructions embodied thereon;

a transceiver; and

at least one processor coupled to the transceiver and the one or more non-transitory computer-readable media, the at least one processor configured to execute the computer-executable instructions to:

receive, via the transceiver, a plurality of configured grant configurations for allocating a group of Physical Uplink Shared Channel (PUSCH) durations in a same bandwidth part (BWP) of a same serving cell, wherein at least two or more of the PUSCH durations in the group overlap in a time domain;

identify a set of one or more PUSCH durations that may be used for a PUSCH repetition transmission from the group of PUSCH durations;

select a specific PUSCH duration from the identified set of one or more PUSCH durations as a prioritized PUSCH duration; and

perform the PUSCH repetition transmission, via the transceiver, on the prioritized PUSCH duration.

113. Apple does not infringe claim 1 of the ’412 Patent at least because Apple’s products do not satisfy at least the limitations of claim 1 requiring that the at least one processor is configured to execute the computer-executable instructions to receive “a plurality of configured grant configurations for allocating a group of Physical Uplink Shared Channel (PUSCH) durations in a same bandwidth part (BWP) of a same serving cell, wherein at least two or more of the PUSCH durations in the group overlap in a time domain.” Hannibal has not shown that Apple supports this portion of the 3GPP standard in the manner described in the standard or that such functionality is required by the standard. Further, support of the relevant 3GPP standards in Apple products does not require “two or more of the PUSCH durations in the group [to] overlap in a time domain.” On information and belief, the portions of the standards that Hannibal may rely upon do not require the claimed limitations.

114. Additionally, Apple does not infringe claim 1 of the ’412 Patent at least because Apple’s products do not satisfy at least the limitations of claim 1 requiring that the at least one processor is configured to execute the computer-executable instructions to “identify a set of one or more PUSCH durations that may be used for a PUSCH repetition transmission from the group of PUSCH durations.” More specifically, support of the relevant 3GPP standards in Apple products does not require the products to make this identification. On information and belief, the portions of the standards that Hannibal may rely upon do not require the claimed limitations.

115. No third party infringes any claim of the ’412 Patent by using the Apple Accused Devices. Hannibal warranted that “there is no basis to allege that Apple willfully or knowingly infringed the Patents, or has induced others to infringe or contributed to infringement by others.” Ex. 1, § 3. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Hannibal does not show that Apple had knowledge of the ’412 Patent or alleged infringement of the ’412 Patent by the Apple Accused Devices during the relevant time. For at least the reasons explained above, the Apple Accused Devices and the use of the Apple Accused Devices do not directly infringe the ’412 Patent. The Apple Accused Devices are not designed for use in any combination which infringes any claim of the ’412 Patent. To the contrary, each has substantial uses that do not infringe any claim of the ’412 Patent and are not accused by Hannibal of infringing the ’412 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

116. Thus, there exists an actual controversy between Apple and Hannibal with respect to Apple’s alleged infringement of the ’412 Patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties’ respective rights regarding the ’412 Patent.

117. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the ’412 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Apple requests that judgment be entered:

A. In favor of Apple against Hannibal on Apple’s claims;

B. Declaring that Hannibal breached [redacted]

C. Declaring that Hannibal breached its obligations under the ETSI IPR Policy;

D. Declaring that, in light of its FRAND commitment, Hannibal is not entitled to injunctive or exclusionary relief against Apple based on the Patents-in-Suit;

E. Awarding Apple damages, including costs and fees, from the WDTX Action;

F. Declaring that Apple does not infringe, directly or indirectly, the Patents-in-Suit, either literally or under the doctrine of equivalents;

G. Declaring that Apple does not induce infringement of the Patents-in-Suit;

H. Declaring that Apple does not contribute to infringement of the Patents-in-Suit;

I. Finding that this is an exceptional case under 35 U.S.C. § 285;

J. Awarding Apple its costs and attorneys' fees in connection with this action;

K. Awarding Apple such further and additional relief as the Court deems just, equitable, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Apple respectfully demands a trial by jury on all issues triable by jury.

Dated: October 16, 2026

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

By: */s/ Erik R. Puknys*

Erik R. Puknys (SBN 190926)
erik.puknys@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone:(650) 849-6600
Facsimile: (650) 849-6666

*Attorney for Plaintiff*
*APPLE INC.*